**UNITED STATES of America**

v.

**Thomas MAZZONI.**

**Crim. No. 84–00482–07.**

United States District Court, E.D. Pennsylvania.

Sept. 25, 1987.

James Becker, H. Geoffrey Moulton, Jr., Philadelphia, Pa., for plaintiff.

Donald F. Manno, Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

DITTER, District Judge.

On January 13, 1987, the government moved that defendant be ordered to serve

the remainder of his sentence. Basically, the government contends that defendant should not be credited with time towards his federal sentence for the period he has spent in the New Jersey Intensive Supervision Program ("ISP"). On March 17, 1987, I granted the government's motion; however, I deferred defendant's reporting date so that he could brief his objections to my order.[1]

On May 23, 1985, defendant plead guilty before me to charges of conspiracy to distribute diazepam and unlawful use of a telephone. Defendant had previously plead guilty to drug charges in New Jersey and on May 28, 1985, he was sentenced to five years imprisonment. Three days later, he applied for handling under the intensive supervision program. On June 24, 1985, I sentenced defendant to a two-year term of imprisonment, recommending that he serve it in New Jersey concurrently with his state sentence. When I sentenced defendant, his counsel requested a sentence of probation since "a jail term on this case [ ] would make him not eligible for that program [ISP]...." (1/24/85 N.T. 5).

Defendant then filed a petition for reduction of sentence to probation on the ground that his federal sentence of imprisonment would prevent his entering ISP.

Subsequently, on October 4, 1985, defendant was accepted into ISP on a trial basis. After successful completion of the trial period, defendant's sentence of imprisonment on the state conviction was suspended, and he was resentenced to five years in ISP. Prior to his acceptance, federal officials had not filed a detainer with the New Jersey authorities. In November, 1986, defendant's federal probation officer learned of his release into ISP and the present motion followed.

The government and defendant agree that defendant would not have been accepted into the intensive supervision program if state officials had known of his federal sentence of incarceration. Each side attributes the lack of notice to the other. Defendant also claims that I lack jurisdiction to grant the government's motion or, in the alternative, that his sentence ran while he was sentenced to ISP. Before addressing defendant's arguments, I will briefly summarize the features of ISP.

The New Jersey Intensive Supervision Program is run under the supervision of the New Jersey Superior Court and is designed to alleviate overcrowding in the state's penal institutions. Each applicant undergoes a screening process. Once accepted, a participant is released into the community under the close supervision of an ISP officer and on the condition that he reside in New Jersey, have a community sponsor, submit to random visits or physical examinations by ISP officials, maintain lawful employment, pay all debts and fines, perform community service, and otherwise live a law-abiding life. A prisoner who successfully completes the trial period has his sentence of imprisonment suspended and is resentenced to a term in ISP.

An ISP participant normally receives day to day credit towards his suspended sentence for time spent in ISP. However, the director of ISP wrote that ISP participants who are recommitted "usually receive additional time in custody from the Parole Board." Letter from Richard Talty (Brief for defendant, Exh. 24a).

### A. Jurisdiction

■ Defendant claims that I have no power to grant the government's requested relief because he is under the exclusive custody and control of New Jersey by virtue of his state sentence of imprisonment. It is true that once a person commences a sentence of incarceration the sentencing jurisdiction has the right to exercise control; however, this right only lasts "[u]ntil the end of his term and his discharge...." *Ponzi v. Fessenden*, 258 U.S. 254, 261, 42 S.Ct. 309, 311, 66 L.Ed. 607 (1922). Thus, New Jersey's exclusive jurisdiction ceased when his sentence of imprisonment was suspended, he was placed in ISP, and the

---

1. I initially deferred defendant's reporting date until May 15, 1987, however, this date has been further stayed pending my final decision.

superior court took control over defendant. At that time, defendant's position was similar to a person out on parole or probation.[2] *See, e.g., Cuddy v. United States*, 339 F.2d 172 (9th Cir.1964) (federal authorities did not violate principles of comity by seizing defendant out on parole to complete his federal sentence).

In any event, the superior court, through the director of ISP, has agreed to surrender defendant to federal custody. Since the principle of exclusive jurisdiction is based on interests of comity, acceptance of jurisdiction will not interfere with the state's interests.

■ Defendant also argues that I have no jurisdiction since the time to modify his sentence has run. Fed.R.Crim.P. 35. *See also United States v. Addonizio*, 442 U.S. 178, 179, 99 S.Ct. 2235, 2237, 60 L.Ed.2d 805 (1979). This argument also lacks merit.

The government is seeking enforcement not modification of defendant's sentence of imprisonment. The government has concluded that defendant's time in ISP should not count against his federal sentence. After making this determination, the government could have ordered defendant to begin serving his sentence and defendant's only recourse would have been to file a petition for habeas corpus relief. *See, e.g., Shaw v. Smith*, 680 F.2d 1104 (5th Cir. 1982). Instead, the government has requested a judicial determination that its decision does not violate defendant's rights before it orders defendant to complete his sentence. The change in the order of presentation of the dispute does not affect my jurisdiction. Moreover, if it did, defendant would be the one harmed by having to challenge the government's action from prison. *See also United States v. Liddy*,

510 F.2d 669, 671 n. 6 (D.C.Cir.1974) (*en banc*) (construing district court order suspending execution of sentence as "a declaratory judgment that it would deny any future motion by Liddy under 28 U.S.C. § 2255"), *cert. denied*, 420 U.S. 980, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975).

**B. Credit for Time Spent in ISP**

■ Defendant seeks credit for time spent in the intensive supervision program on the grounds that: (1) ISP is equivalent to custody; and (2) that his federal sentence has run continuously from the date it commenced. I have already found that ISP is not equivalent to custody. Nevertheless, I conclude that defendant's sentence has run continuously until the government filed the present motion.

The principle of continuity of sentence was first enunciated in *White v. Pearlman*, 42 F.2d 788 (10th Cir.1930) where the court held:

> A sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installments ... [W]here a prisoner is discharged from a penal institution, without any fault on his part, and without violation of parole, ... his sentence continues to run while he is at liberty.

*Id.* at 789. *See also Green v. Christiansen*, 732 F.2d 1397 (9th Cir.1984); *Liddy*, 510 F.2d at 674–75.

The government has failed to show defendant's release into ISP was the result of any wrongdoing by defendant; therefore, his sentence has run continuously until January 13, 1987.

---

**2.** Defendant argues that ISP is more in the nature of prison than parole or probation. He relies on the stringent conditions of ISP as well as the day to day credit given towards the sentence of imprisonment. *See, e.g., State v. Reyes*, 207 N.J.Super. 126, 504 A.2d 43, 53 n. 8 (1986). The conditions of ISP, however, vary in degree but not nature from parole or probation conditions. In addition, a parole violator is given day to day credit unless he commits a crime while free on parole. *See, e.g.,* 28 C.F.R. § 2.52

(1986). Moreover, ISP is recognized by the New Jersey courts as "a form of intermediate punishment between incarceration and probation...." *State of New Jersey v. Abbati*, 99 N.J. 418, 433, 493 A.2d 513, 520 (1985). Similarly, the ISP notice form provides that ISP "is an alternative to incarceration in state prison. If you are sentenced to a state prison and meet the eligibility criteria ... you may be released to supervision in the community."

No evidence was presented that shows that defendant misled the state officials regarding his federal sentence. Defendant received his ISP notification form on May 28, 1985, which gave him sixty days to apply to ISP. He did so on May 31, 1985. The application required defendant to list any *pending charges;* however, his federal charges were not pending since he had already plead guilty.

In addition, at no time during the application process was there a final and conclusive determination that defendant would receive a sentence of imprisonment on his federal charges. When he applied for ISP, prior to sentencing, defendant could not have known what I would do. After sentencing, defendant filed a motion under Fed.R.Crim.P. 35 seeking a reduction of his sentence to probation. This motion was not ruled upon prior to his acceptance into ISP. Thus, defendant's failure to come forward on his own initiative does not rise to the level of wrongful conduct that limits the continuity of his sentence.

Because the government has not shown that defendant ever intentionally misled state officials, defendant's federal sentence continued to run while he was on ISP. This conclusion is further supported by the nature of his release. Unlike situations where a prisoner was released to complete freedom, defendant had substantial restrictions placed on his freedom while he participated in ISP. Thus, absent any wrongdoing by defendant it would be especially inequitable to deny defendant credit for time in ISP.

■ The final question is whether defendant should be recommitted to serve the balance of his federal sentence, approximately five months. Initially, I conclude that the government's actions do not lead to a finding that it has waived or is estopped from reincarcerating defendant. *See Green v. Christiansen, supra.* The government's failure to file a detainer is merely a ministerial mistake that does not constitute waiver or estoppel. *See also Johnson v. Williford,* 682 F.2d 868 (9th Cir.1982). Nevertheless, a decision to recommit defendant requires consideration of

defendant's behavior while on release as well as a weighing of the government's interest in reincarceration against defendant's interest in adjustment and progress in community life. *See, e.g., United States v. Merritt,* 478 F.Supp. 804, 808 (D.D.C.1979). I will, therefore, order a hearing on this issue at which time I will decide whether defendant must serve the remainder of his sentence.

An order follows.

## ORDER

AND NOW, this 25th day of September, 1987, upon consideration of the briefs filed by the government and defendant in connection with my order dated March 17, 1987, that order is hereby vacated and a final hearing on the government's motion shall be held in courtroom 6A at 9:30 a.m. on October 21, 1987.