# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 10, 2008

Charles R. Fulbruge III
Clerk

No. 07-30067

HANSEL E CAIN

Petitioner–Appellant

v.

FREDRICK MENIFEE

Respondent–Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:06-CV-1657

Before JOLLY, BARKSDALE, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:[*]

Hansel E. Cain, federal prisoner #11654-045, is currently serving a 120-month sentence for unlawful receipt of an unregistered firearm at the United States Penitentiary, Pollock. On September 22, 2006, Cain filed a 28 U.S.C. § 2241 petition, asserting that the Bureau of Prisons ("BOP") miscalculated the commencement date of his sentence and failed to give him proper credit for time served. Cain now appeals the district court's denial and dismissal with prejudice

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of his petition. For the following reasons, we AFFIRM in part and REVERSE in part.

## I. BACKGROUND

Cain was arrested by the Missouri State Highway Patrol on August 29, 1998, for possession of a controlled substance. Thereafter, on January 15, 1999, Cain was indicted by a federal grand jury in the Western District of Missouri for unlawful receipt or possession of an unregistered firearm and other related offenses. Cain eventually pleaded guilty to the federal firearms charge on October 25. On November 8, Cain pleaded guilty to the state possession-of-controlled-substances charge in the Cole County, Missouri Circuit Court and received a five-year sentence to run concurrent to the yet-imposed federal sentence. On March 31, 2000, Cain returned to federal court and was sentenced to a 120-month term to be served consecutively to his state sentence.

On May 5, the BOP sent Cain to the United States Penitentiary in Leavenworth ("USP Leavenworth") for service of his federal sentence. However, when BOP staff reviewed Cain's file, they discovered that he had not satisfied his five-year state sentence and that the federal sentence was to run consecutively to that sentence. Therefore, on May 11, the BOP released Cain to the custody of the Cole County Sheriff's Department for service of his state sentence. On May 12, the United States Marshal's Service ("USMS") lodged a detainer with the Missouri Department of Corrections.

Cain appealed his sentence to the Eighth Circuit Court of Appeals, claiming, inter alia, that the district court erred in imposing his federal sentence consecutively to the state sentence and that he should serve his federal sentence first. United States v. Cain, 6 Fed. Appx. 542, 543 (8th Cir. 2001). The Eighth Circuit rejected Cain's arguments and affirmed the sentence of the district court. Id.

On April 2, 2001, while Cain was in the custody of the Missouri Department of Corrections, he filed a pro se Motion to Vacate pursuant to 28 U.S.C. § 2255. Construing the motion as a § 2241 petition challenging the federal detainer, the district court denied relief.

Cain completed his Missouri sentence on February 10, 2002, and was thereupon taken into federal custody to serve his federal sentence. On February 11, Cain began the process of exhausting his administrative remedies with the BOP, claiming that he was being denied credit toward his federal sentence for time spent in federal and state custody prior to February 10. Asserting that Cain had been in state custody until his release from state prison on February 10, 2002, the BOP rejected Cain's grievance petitions. The BOP specifically noted that Cain had received credit against his state sentence for his time spent in federal detention facilities prior to February 10.

Cain subsequently filed the instant § 2241 petition arguing that the BOP miscalculated the commencement date of his federal sentence and failed to give him proper credit on his federal sentence. Specifically, Cain asserted that: (1) he was transferred to exclusive federal custody on December 8, 1999, after execution of a federal arrest warrant; (2) his federal sentence commenced for purposes of 18 U.S.C. § 3585(a) on May 5, 2000, when he was delivered to USP Leavenworth to begin his federal sentence; and (3) his federal sentence was, thus, delayed and interrupted in violation of due process and § 3585(a). Therefore, Cain sought credit on his federal sentence from December 8, 1999–when exclusive federal custody allegedly began–or alternatively from May 5, 2000–when his federal sentence allegedly began under § 3585(a).

The magistrate judge, prior to service on the respondent, found that: (1) Cain was in state custody until February 10, 2002; (2) Cain could not obtain credit on his federal sentence for time served prior to February 10 because he had already received credit on his state sentence for that time; and (3) Cain

lacked standing to complain about the order in which he served his state and federal sentences. Cain, thereafter, timely filed objections to the magistrate's report. After independent review, the district court determined that the findings and recommendation of the magistrate judge were correct and denied and dismissed the § 2241 petition with prejudice. Cain now appeals, seeking only post-sentence credit on his federal sentence from May 5, 2000, the date his sentence allegedly began under § 3585(a).

## II. STANDARD OF REVIEW

In the context of a § 2241 petition, this Court "reviews the district court's determinations of law de novo and its findings of fact for clear error." Venegas v. Henman, 126 F.3d 760, 761 (5th Cir. 1997).

## III. DISCUSSION

A § 2241 petition for writ of habeas corpus "attacks the manner in which a sentence is carried out or the prison authorities' determination of its duration." Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000). Section 2241 is thus the proper procedural vehicle for Cain to seek credit for prior custody. See United States v. Garcia-Gutierrez, 835 F.2d 585, 586 (5th Cir. 1988).

Cain's central complaint is that his federal sentence commenced on May 5, 2000, and the BOP impermissibly interrupted the federal sentence on May 11, 2000, by turning him over to the Missouri Department of Corrections to serve his state sentence. Consequently, Cain argues that he should receive credit on his federal sentence for time served between May 5, 2000, and February 10, 2002, because service of a federal sentence in installments violates due process.[1]

A. Commencement Of Federal Sentence

---

[1] Cain's request for credit can be split into two time periods: (1) from May 5 to May 11, 2000, which Cain spent in federal prison at USP Leavenworth, and (2) from May 11, 2000, to February 10, 2002, during which Cain served his state sentence in state prison.

Under 18 U.S.C. § 3585(a), a federal sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." Cain asserts that he was in full federal custody before May 5, 2000–the date he was transported to USP Leavenworth to serve his federal sentence–and, therefore, his federal sentence "commenced" on that date. During his administrative remedies grievances, the BOP asserted that Cain's appearances before the federal court were pursuant to a writ of habeas corpus ad prosequendum. Consequently, according to the BOP, Cain was merely "on loan" to federal authorities from Missouri, and his state custody remained uninterrupted until February 10, 2002, when Cain completed his Missouri sentence and was taken into BOP custody. See United States v. Brown, 753 F.2d 455, 456 (5th Cir. 1985) (per curiam) ("[For] short intervals while 'on loan' to federal authorities pursuant to writs of habeas corpus ad prosequendum, the state's custody over Brown remained uninterrupted[.]"). Thus, the BOP argues, Cain's federal sentence did not "commence" until February 10, 2002.

The evidence, however, indicates that although Cain was initially "on loan" to federal authorities for short periods of time pursuant to a writ of habeas corpus ad prosequendum, Cain was in exclusive federal custody beginning on December 8, 1999, pursuant to his arrest by federal authorities. Missouri first retained custody over Cain beginning on August 29, 1998, when Cain was arrested by the Missouri State Highway Patrol for possession of a controlled substance. On January 15, 1999, Cain was indicted by a federal grand jury in the Western District of Missouri, and that same day, the court issued a warrant for Cain's arrest. On March 18, the district court issued an order for a writ of habeas corpus ad prosequendum, ordering the clerk to:

> issue a Writ of Habeas Corpus Ad Prosequendum directed to the Miller County Sheriff's Office, Tuscumbia, Missouri, and to the United States Marshal for the Western District of Missouri, or any

other authorized officer, to produce one HANSEL E. CAIN, now confined at the Miller County Jail . . . before the United States Magistrate . . . at 2:00 p.m., on March 24, 1999; or at any time thereafter as the Court may direct, so that said person may appear in accordance with law in the above entitled cause; and to retain said person in federal custody until all proceedings in this cause have been completed, and then to return said person to the aforementioned custody as may be directed by this Court.

The USMS prisoner tracking system individual custody and detention report for Cain ("the USMS report") reflects that: (1) Cain was received by federal authorities pursuant to a writ of habeas corpus ad prosequendum on March 24, 1999, and released the same day; (2) Cain was received by federal authorities several times between March 24 and October 26, 1999, pursuant to a writ, and each time, Cain was released from federal custody the same day; and (3) on December 8, 1999, Cain was transferred to the USMS by Miller County officials based on a USMS detainer, rather than pursuant to a writ.[2]  Significantly, the arrest warrant indicates that Cain was arrested by federal authorities on December 8, 1999.[3]  See Floyd v. Berkebile, No. 3:05-CV-2489, 2008 WL 153494, at *3 (N.D. Tex. Jan. 15, 2008) ("The federal arrest exhibits a specific relinquishment of primary jurisdiction over Petitioner to the federal government, not a temporary loan to a different sovereign.") (emphasis added).  The record shows that Cain was then transported to Calloway County Jail in Kentucky and held there solely for the USMS for a period of 146 days, whereupon he was transferred to USP Leavenworth to begin his federal sentence.  Finally, there is simply no contrary evidence to indicate that Cain appeared at any subsequent federal court hearings pursuant to a writ of habeas corpus ad prosequendum.

[2] The entry in the USMS report is "CUST FM DETAINER/MILLER CO."

[3] Although nowhere stated, it seems that after Cain's indictment, a detainer was lodged against him based on the January 15, 1999, arrest warrant.  Thus, it appears that the December 8, 1999 "arrest" and "transfer based on a detainer" reflect the same act of the USMS taking federal custody of Cain.

Thus, the evidence overwhelmingly indicates that Cain was in full federal custody beginning on December 8, 1999.

This conclusion is supported by the further acts of the two sovereigns. First, the USMS report shows that Missouri subsequently used an ad prosequendum writ to regain custody of Cain from April 24-26, 2000.[4] Such a request for the "loan" of Cain to Missouri authorities reflects Cain's change of custody and Missouri's consent to such a change. Second, during the federal sentencing hearing on March 31, 2000, the deputy marshal told the judge:

> My understanding, Your Honor, is [Cain is] in federal custody now. The charges in Miller County were either taken care of or dismissed. They lifted their charges and we took full custody of him.

(emphasis added). Although certainly not dispositive, this statement shows that the marshals handling Cain believed him to be in full federal custody.

Thus, Cain was in federal custody beginning on December 8, 1999, and his federal sentence "commenced" under § 3585(a) on May 5, 2000, when he was transported to USP Leavenworth to serve his federal sentence.

B. Sentence Calculation

1. Credit for Time in Federal Custody

Because Cain was in federal custody and serving his federal sentence from May 5 to May 11, 2000, he is entitled to credit on his federal sentence for the six days he spent at USP Leavenworth before he was transferred to the Missouri Department of Corrections.[5]

2. Credit for Time in State Custody

---

[4] The entry in the USMS report is "TO LACLEDE CO ON WHCAP." WHCAP stands for writ of habeas corpus ad prosequendum. Laclede County is a county in Missouri.

[5] The fact that Missouri may have credited Cain's state sentence with such time does not alter Cain's entitlement to credit on his federal sentence. To hold otherwise would mean that Cain's federal sentence "commenced," but never began to run despite his incarceration in federal prison. Such a result would render the word "commence[]" in § 3585(a) meaningless.

Cain, however, under the rationale of Free v. Miles, 333 F.3d 550 (5th Cir. 2003) (per curiam), is not entitled to credit on his federal sentence for the time he spent serving his state sentence in state prison (from May 11, 2000 to February 10, 2002).

In Free, this Court addressed the "common law rule [that] requires that a prisoner be credited with time served when an interruption in a prison sentence is not caused by, or is not the fault of, the prisoner himself." Id. at 553. This is the same rule that Cain invokes in asserting that he is entitled to credit on his federal sentence for the time he spent in state prison during the "interruption" of his federal sentence.[6] Although Free was in a similar situation as Cain–i.e., his federal sentence had commenced, he was transferred to state prison before serving his full federal sentence, and he was returned to federal prison after completion of his state sentence–this Court held that the common law rule did not entitle Free to credit for time served during the interruption of his federal sentence. The Court stated that: "The limited function of this rule is clear: Its sole purpose is to prevent the government from abusing its coercive power to imprison a person by artificially extending the duration of his sentence through releases and re-incarcerations." Id. at 554 (emphasis added). Noting that "Free's total time of incarceration in both federal and state prisons has not been–and will not be–increased by even a single day as a result of his mistakenly serving the first six months of his federal sentence prior to completing the service of his state sentence," the Court concluded that the fact that he served his state and federal sentences "in two shifts between sovereigns rather than one is of no moment." Id. at 555. The Court summarized its conclusion, stating that the rule against piecemeal incarcerations only "precludes the government from artificially extending the expiration date of a prison sentence"; it does not, however, "justify

---

[6] Cain asserts that this rule implicates constitutional due process, but Free makes clear that the rule is simply a "common law rule." 333 F.3d at 554.

or mandate that a prisoner receive a 'get out of jail early' card any time that such a minuet occurs, even when the prisoner is not at fault." Id. (emphasis added).

The Court's treatment of this "common law rule" in Free dictates the result in the case at hand. The federal sentencing judge sentenced Cain to a term of imprisonment of 120 months to run consecutively to the state sentence.[7] Consequently, Cain is serving the correct total time, and the fact that he "will have done so in two shifts between sovereigns rather than one is of no moment."[8] Id. Cain should not receive a "get out of jail early" card, id., and is thus not entitled to credit on his federal sentence for his time in state custody.[9] Cain's

---

[7] Cain argues that the federal sentencing judge's oral pronouncement of sentence was ambiguous with respect to whether part of his federal sentence was to run concurrently to his state sentence, and under the rule of lenity he should receive credit from the commencement date of his sentence. Although the federal sentencing judge flirts with the idea of making part of Cain's sentence consecutive and part concurrent, it is clear that the judge ultimately rejects that idea: "I'm going to stand, then, by what I have imposed in this matter, that the sentence is to run consecutively to the sentence imposed in Cole County Circuit Court, Case No. 398-2892F."

[8] Cain could complain that because his state sentence was to run concurrent to his federal sentence, the BOP's act of interrupting his federal sentence to serve his state sentence actually resulted in a significant extension of his total time of incarceration. Although this may differentiate the case at hand from Free, the Free Court was only concerned about the government "artificially extending the expiration day of a prison sentence." 333 F.3d at 555 (emphasis added). The BOP's action in sending Cain to serve his state sentence first, however, was not an artificial extension of Cain's sentence, but rather a permissible attempt to effectuate the consecutive nature of his federal sentence. See Causey v. Civiletti, 621 F.2d 691, 694 (5th Cir. 1980) ("[T]he federal government and a state are perfectly free to make any agreement between themselves concerning which of their sentences will be served first[.]"); Jeter v. Keohane, 739 F.2d 257, 258 (7th Cir. 1984) ("An individual who has violated the laws of two or more sovereigns may not complain of the order in which he is to serve the various sentences.").

Given that the federal government could permissibly send Cain to serve his state sentence first, Cain is actually receiving a windfall of six days as a result BOP's "mistake" in transporting Cain to USP Leavenworth and holding him there for six days–he received credit for this time on his state sentence and will receive credit for this time on his federal sentence, as explained in Section III.B.1 supra.

[9] The fact that Free was actually "on loan" to federal authorities via a writ of habeas corpus ad prosequendum when his federal sentence commenced, whereas Cain was under full federal custody when his federal sentence commenced, does not affect our analysis, as Free's conclusion does not depend on the fact that Free was "on loan" when he began his federal

9

reliance on the Tenth Circuit's decision in Weekes v. Fleming, 301 F.3d 1175 (10th Cir. 2002) is unavailing, as Free expressly rejected the logic relied on by Weekes. Compare Weekes, 301 F.3d at 1181-82 (citing Luther v. Vanyur, 14 F. Supp. 2d 773 (E.D.N.C. 1997), to support its conclusion that the prisoner was entitled to credit on his federal sentence for time served in state custody), with Free, 333 F.3d at 554 ("We conclude that the district court in Luther overbroadly applied the common law rule that a prisoner is entitled to credit for time served when he is incarcerated discontinuously through no fault of his own.").

IV. CONCLUSION

Cain is entitled to six-days credit on his federal sentence for time served at USP Leavenworth from May 5, 2000, to May 11, 2000. Cain, however, is not entitled to any credit on his federal sentence for time served on his state sentence from May 11, 2000, to February 10, 2002.

AFFIRMED in part; REVERSED in part.

---

sentence. In fact, in its analysis of the "common law rule," the Free Court adopted the reasoning of two cases from other circuits, Free, 333 F.3d at 554-55, and in both cases the prisoner was in full federal custody when his federal sentence was interrupted with service of a state sentence. See Dunne v. Keohane, 14 F.3d 335, 336-37 (7th Cir. 1994); Cox v. Fed. Bureau of Prisons, 643 F.2d 534, 535-37 (8th Cir. 1981) (per curiam).