Johnny Horton WEEKES,
Petitioner–Appellant,

v.

L.E. FLEMING, Warden, Respondent–Appellee.

No. 01–6054.

United States Court of Appeals,
Tenth Circuit.

Aug. 14, 2002.

Johnny Horton Weekes, pro se.

Michael G. Katz, Federal Public Defender, and James P. Moran, Assistant Federal Public Defender, Denver, CO, on supplemental brief for Petitioner–Appellant.

Daniel G. Webber, Jr., United States Attorney, and K. Lynn Anderson, Assistant United States Attorney, Oklahoma City, OK, for Respondent–Appellee.

Before HENRY, McKAY, Circuit Judges, and BROWN,* Senior District Judge.

_____

* The Honorable Wesley E. Brown, Senior District Judge for the District of Kansas, sitting by designation.

BROWN, Senior District Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Johnny Horton Weekes, a federal inmate appearing pro se, appeals from an order dismissing his petition for habeas corpus relief brought pursuant to 28 U.S.C. § 2241. Mr. Weekes asserts that he is entitled to credit for pre-federal-sentence time served under 18 U.S.C. § 3585(b). He also asserts that he is entitled to credit for time served in post-federal-sentence state incarceration under 18 U.S.C. § 3585(a) and *White v. Pearlman*, 42 F.2d 788 (10th Cir.1930), because he has been forced to serve his federal sentence "on an installment basis" in violation of the statute and his constitutional rights. Appellant's Br. at 3, 5. Our jurisdiction arises under 28 U.S.C. § 1291. We reject the first argument but, because we find merit in the second argument, we reverse.[1]

## I. Standard of review

The complex procedural history of this case is partially documented in the magistrate judge's November 6, 2000 report and recommendation and the district court's December 21, 2000 order denying the petition for writ of habeas corpus. Mr. Weekes does not claim that the procedural history is factually incorrect. Rather, he argues that the court misinterpreted the record and the applicable law. We thus review de novo the district court's dismiss-

_____

1. Given our resolution of this case, we need not reach Mr. Weekes' further contentions in regard to the application of U.S.S.G.'s 5G1.3.

al of Mr. Weekes' petition. *Patterson v. Knowles,* 162 F.3d 574, 575 (10th Cir.1998).

## II. Procedural history

Mr. Weekes was arrested on November 13, 1993, by Idaho state authorities and charged with possession of a controlled substance in Bannock County, Idaho. He pleaded guilty to the charge, and on April 18, 1994, was sentenced to the custody of the Idaho Department of Corrections (DOC) for a fixed term of two years and a subsequent indeterminate term of three years. This sentence was suspended and Mr. Weekes was placed on three years' probation. Just two days later, on April 20, 1994, Mr. Weekes was again arrested, taken into state custody in Bonneville County, Idaho, and charged with additional, unrelated state drug offenses. On May 2, 1994, he was transported from Bonneville County to Bannock County to attend a hearing on a probation violation complaint on the April 18, 1994 sentence. The judge set a May 27, 1994, hearing on the probation violation and remanded Mr. Weekes to state custody in the Bonneville County jail. Appellee's App. at 106–07.

A federal indictment issued on May 12, 1994, for federal drug offenses associated with Mr. Weekes' April 20 arrest. He was subsequently "arrested" on a warrant by the United States Marshals Service on May 16, while still in state custody, and taken into federal custody for prosecution on those charges. On May 24, 1994, the April 20 state charges were dismissed because of the pending federal charges. Mr. Weekes was transferred back into state custody on May 25 pursuant to a state writ of habeas corpus ad prosequendum so that he could appear for his May 27 state pro-

bation violation hearing. At that time, the state court resentenced him to a two-to-five year term of imprisonment on the probation violation and 1993 conviction. The order stated "this sentence shall run concurrent with any sentence imposed by the Federal Courts regarding the same charge." *Id.* at 19. A copy of the order was sent to the federal judge assigned to hear Mr. Weekes' federal criminal prosecution. *See* Supp.App. at 283, 221.

After the hearing Mr. Weekes was returned to federal custody, where, upon a plea of guilty, he was sentenced on February 7, 1995, to a 188–month term of federal imprisonment.[2] On February 21, 1995, the United States designated Mr. Weekes to be transferred to the federal penitentiary in Lompoc, California, to begin serving his federal sentence. The United States Marshal issued an "Order to Deliver" to the Bannock County Jail on March 10, 1995, requiring the jail to deliver its prisoner, Mr. Weekes, to a United States Marshal. *Id.* at 249. Mr. Weekes arrived at Lompoc on March 16, 1995.

On March 24, 1995, Bureau of Prisons (BOP) staff at Lompoc discovered that Mr. Weekes had not yet served the state sentence imposed on May 27, 1994. A staff member notified the U.S. Marshals Service in the district of Idaho of this fact and stated that, since the 1995 federal judgment was silent on whether the federal sentence should be served consecutively or concurrently to the state sentence, it should be served consecutively. *Id.* at 258. On April 3, the U.S. Marshals Service in Idaho requested the prisoner transportation division to arrange for Mr. Weekes' transport back to the Idaho State Correc-

---

**2.** Mr. Weekes was resentenced on the federal offense on March 17, 1999, to a 151–month term after the district court vacated a count for possession of a firearm pursuant to *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Appellee's App. at

60. The court later clarified that it intended this sentence to be served consecutively to his state sentence because the state conviction for the 1993 drug charge was for a different underlying crime than the federal conviction. *Id.* at 131, 116 S.Ct. 501.

tional Facility "to serve state sentence as he was given 2–5 yrs. for prob. violation ... before he was sentenced federally but while he was in fed. cust." *Id.* at 260.

On April 12, 1995, the Idaho DOC lodged a notice of detainer with the Lompoc penitentiary. The notice stated that Mr. Weekes "has a concurrent sentence running in Idaho" and requested sixty days notice prior to his release from federal custody. *Id.* at 262. On April 18, Lompoc acknowledged receipt and filing of the detainer and informed the Idaho DOC that Mr. Weekes' federal "[r]elease is tentatively scheduled for 10–23–2003." *Id.* at 256. A copy of this "detainer action letter" was apparently given to Mr. Weekes. *See id.*

On the same date, however, the U.S. Marshals Service prepared a transit document authorizing Mr. Weekes' transfer back to Idaho, and he was transferred and released to state custody in Idaho on April 20, 1995. *Id.* at 264, 280. Appellee states that the release to state custody was made on the basis of the Idaho detainer. *See id.* at 253.

It is uncontroverted that Mr. Weekes was given credit on his state sentence from April 20, 1994 to April 19, 1995, including the time he spent in federal custody. After serving in Idaho state prison for a full five-year state term, on April 18, 1999, Mr. Weekes was again transferred to the custody of the federal BOP. Citing *White* and § 3585, Mr. Weekes asserted that his federal sentence began on February 21, 1995, and that he should be released or at least be given credit on his federal sentence for the five years that he was incarcerated in state prison.

The BOP refused to grant such credit, basing its denial on Prisons Program Statement No. 5880.28 (July 29, 1994) of its Sentence Computation Manual (hereinafter P.P.S. 5880.28), and contending that Mr. Weekes was in federal custody on the basis of a federal writ of habeas corpus ad

prosequendum. Appellee's App. at 120–21, 128. The BOP also based its denial of federal credit on its determination that primary jurisdiction remained in Idaho and that Mr. Weekes' transfer to Lompoc was an error because he should have been returned to Idaho after federal sentencing as a required condition of the writ. *Id.* at 121. The BOP thus contended that Mr. Weekes' federal sentence did not begin until April 18, 1999. Mr. Weekes filed this habeas petition.

### III. Discussion

**A. Pre-sentence credit under 18 U.S.C. § 3585(b).**

 A federal prisoner is statutorily entitled to credit for time spent in official detention *prior* to the date his federal sentence commences if the detention resulted from the same offense of conviction or from another charge for which the defendant was arrested after commission of the offense of conviction *and* if that time has not been credited against another sentence. 18 U.S.C. § 3585(b). Mr. Weekes received credit against his state sentence for all the time served prior to the date his federal sentence commenced, whether the commencement date of his federal sentence is considered to be in 1995 or 1999. The magistrate judge's report and recommendation and the district court order thoroughly and accurately analyzed Mr. Weekes' claim under § 3585(b), and for substantially the same reasons as stated in the report and order, we agree that Mr. Weekes is not entitled to pre-sentence credit under § 3585(b).

**B. Post-sentence credit under 18 U.S.C. § 3585(a) and *White*.**

Neither the magistrate judge's report nor the district court order, however, addresses Mr. Weekes' additional claim that he is entitled to post-sentencing federal

credit for time served in a state facility under the principle that a "sentence of five years means a continuous sentence, unless interrupted by ... some fault of the prisoner, and he cannot be required to serve it in installments." *White*, 42 F.2d at 789. At the heart of Mr. Weekes' argument is his claim that, pursuant to § 3585(a), his federal sentence actually commenced when he was designated to be transferred to serve his time at the federal penitentiary in Lompoc on February 21, 1995, and continued to run despite the fact that the United States sent him to Idaho to serve his state sentence. Mr. Weekes vigorously contended that no federal writ of habeas corpus ad prosequendum ever existed.

Appellee maintained that (1) Mr. Weekes' release to federal custody on May 16 was "erroneous[ ]," Appellee's Br. at 4, 13; (2) sending Mr. Weekes to begin serving his federal sentence was simply a further "mistake," *id.* at 5, with no legal significance; and (3) it was under a legal obligation to return Mr. Weekes to Idaho for service of his state sentence first because Mr. Weekes had been "borrowed from the primary custodian via a writ of habeas corpus ad prosequendum," *id.* at 12. Our first task is to determine when Mr. Weekes' federal sentence actually commenced.

## 1. Commencement of federal sentence.

 Subject to statutory restrictions, the United States Attorney General has the exclusive authority to determine when a federal sentence shall begin and where the federal sentence shall be served. *See Ponzi v. Fessenden*, 258 U.S. 254, 262, 42 S.Ct. 309, 66 L.Ed. 607 (1922). Section 3585(a) provides that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." There is a presumption that a federal sentence imposed after a prior state sentence will be served consecutively to the state sentence. *See* 18 U.S.C. § 3584(a). Here, however, the record conclusively shows that the United States Attorney General chose to begin Mr. Weekes' federal sentence on February 21, 1995, by designating a federal prison where he should serve and then transporting him to that facility. *See* § 3585(a). This is a permissible exercise of the Attorney General's discretion, as demonstrated by the BOP's prison program statement.[3] Under the relevant section, which interprets § 3585(a),

> [i]f the prisoner ... is in exclusive federal custody (not under the jurisdiction of a federal writ of habeas corpus ad prosequendum) at the time of sentencing on the basis of the conviction for which the sentence is imposed, the sentence commences on the date of imposition, even if a state sentence is running along concurrently.

P.P.S. 5880.28(b).

Although appellee contended in his brief that Mr. Weekes was in federal custody pursuant to a writ of habeas corpus ad prosequendum, he did not submit the writ with his appendix. When ordered to produce the writ, appellee conceded that none exists. We conclude that Mr. Weekes' federal sentence began on February 21, 1995. *Cf. Hayward v. Looney*, 246 F.2d 56, 58 (10th Cir.1957) (holding that a federal sentence began to run after service of state sentence when prisoner was surrendered

---

**3.** A Program Statement is an internal agency guideline, which is akin to an interpretive rule. *See Reno v. Koray*, 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995). Where the BOP's interpretation is a "permissible construction of the statute," it is entitled to "some deference." *Id.*

back to state prison facility without having been received at a federal penal institution for service of his federal sentence).

## 2. Interruption of federal sentence.

 The next question we must answer is whether the United States may interrupt the service of a federal sentence without giving the federal prisoner credit on that federal sentence. We note the general rule that "a sentence of five years means a continuous sentence, unless interrupted by ... some fault of the prisoner, and he cannot be required to serve it in installments." *White,* 42 F.2d at 788; *cf. Newell v. Page,* 362 F.2d 538, 539 (10th Cir.1966) (recognizing "right to continuous service" of sentence but holding that prisoner's escape caused interruption, so no right to credit); *see also Dunne v. Keohane,* 14 F.3d 335, 336 (7th Cir.1994) (noting and upholding common-law rule applicable to federal sentencing "that unless interrupted by fault of the prisoner ... a prison sentence runs continuously from the date on which the defendant surrenders to begin serving it"). Appellee contends that, because the United States was under a legal duty to return Mr. Weekes to Idaho for service of his state sentence, the interruption of his federal sentence should be excused. Did the United States have such a duty? Again, the record supports our conclusion that it did not.

 The sovereign that first acquires custody of a defendant in a criminal case is entitled to custody until it has exhausted its remedy against the defendant. *Ponzi,* 258 U.S. at 260, 42 S.Ct. 309; *Rawls v. United States,* 166 F.2d 532, 533 (10th

Cir.1948). This rule of comity does not destroy the jurisdiction of the other sovereign over the defendant; it simply requires it to postpone its exercise of jurisdiction until the first sovereign is through with him or until the first sovereign agrees to temporarily or permanently relinquish custody. *See Rawls,* 166 F.2d at 533; *see also Hayward,* 246 F.2d at 57 (noting that the first sovereign with custody determines whether jurisdiction and custody shall be retained or surrendered). "The law of comity is such that ... two sovereigns may decide between themselves which shall have custody of a convicted prisoner; however, the sovereign having prior jurisdiction need not waive its right to custody." *Hernandez v. United States Attorney Gen.,* 689 F.2d 915, 919 (10th Cir.1982).[4]

As the first arresting sovereign, Idaho initially had primary custody of Mr. Weekes and the right to maintain or relinquish control of him. *See Ponzi,* 258 U.S. at 260, 42 S.Ct. 309; *Williams v. Taylor,* 327 F.2d 322, 323 (10th Cir.1964) (per curiam). If the State of Idaho maintained primary custody and the United States took only temporary custody under either a detainer and written request for temporary custody or a writ of habeas corpus ad prosequendum,[5] Idaho was entitled to Mr. Weekes' return after his federal sentencing under the law of comity and the requirements of the writ. *See Crawford v. Jackson,* 589 F.2d 693, 695 (D.C.Cir.1978); *cf. Lunsford v. Hudspeth,* 126 F.2d 653, 656 (10th Cir.1942) (stating that custody and control of a prisoner is limited to the

---

**4.** Of course, a defendant does not have standing to "complain of or choose the manner in which each sovereign proceeds against him so long as his constitutional rights in each trial are not violated." *Rawls,* 166 F.2d at 534.

**5.** In *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), the Court

described the difference between detainers and writs of habeas corpus ad prosequendum and noted that, after filing a notice of detainer, the prosecutor secures temporary custody by presenting the state with either a written request for temporary custody or a writ of habeas corpus ad prosequendum. *Id.* at 362, 98 S.Ct. 1834.

purposes for which he is obtained from state authorities). Conversely, if Idaho chose to relinquish or transfer its primary custody to the United States, leaving the state sentence to be served concurrently with the subsequent federal sentence, then the United States was relieved of its duty to return Mr. Weekes to Idaho to complete his state sentence before commencing his federal sentence. *See Hernandez*, 689 F.2d at 918 (noting that sovereign with prior jurisdiction and custody may waive rights and allow another sovereign to proceed with execution of its sentence). Did that happen in this case? Undisputed facts aid us in our inquiry.

The record demonstrates that Idaho indeed relinquished primary custody of Mr. Weekes to the United States. Idaho allowed the United States to take exclusive physical custody of Mr. Weekes without presenting either a written request for temporary custody or a writ of habeas corpus ad prosequendum. When we asked appellee to produce the documents on which the United States based its authority to take custody of Mr. Weekes on May 16, 1994, appellee produced only a warrant for arrest and the indictment. It is presumed, therefore, that both the United States and Idaho agreed to a permanent change of custody. *See* P.P.S. 5880.28(b) (defining exclusive custody as custody obtained without a writ of habeas corpus ad prosequendum); *Stripling v. United States*, 172 F.2d 636, 636 (10th Cir.1949).

This presumption is born out by the further acts of the two sovereigns. Idaho subsequently used an ad prosequendum writ to regain custody of Mr. Weekes for the probation violation hearing, affirma-

tively indicating its consent to change of custody by its request for Mr. Weekes' "loan." *Cf. Brown v. Perrill*, 28 F.3d 1073, 1074–75 (10th Cir.1994) (discussing effect of ad prosequendum writ on custody status of prisoner). The state district court's subsequent sentencing order expressly provided that Mr. Weekes' state sentence should be served concurrently with a future federal sentence, and the court sent a copy to the judge presiding over Mr. Weekes' federal prosecutions. Idaho then lodged a detainer expressly noting that his state sentence was concurrent and requesting Mr. Weekes' return to the state prison system upon completion of his federal sentence, further affirmatively showing its relinquishment of Mr. Weekes to federal primary custody. The United States consistently designated Mr. Weekes as a federal prisoner after it took custody. It acknowledged the detainer and agreed to notify the State when Mr. Weekes' federal sentence was almost completed. The United States was under no duty to return Mr. Weekes to state custody after federal sentencing.[6]

### C. Conclusion.

Under the circumstances and for the reasons stated above, Mr. Weekes must be given federal credit for time served since February 21, 1995, the date his federal sentence actually commenced. *See Luther v. Vanyur*, 14 F.Supp.2d 773 (E.D.N.C. 1997) (holding that federal sentence commenced on date prisoner received into federal custody to begin federal sentence and ran continuously, and granting credit for period of time prisoner was temporarily

---

6. The three unpublished Tenth Circuit decisions cited by appellee as support for its contention that Mr. Weekes is not entitled to federal credit for the time spent in state prison are distinguishable. In two of the cases, we specifically noted that the petitioner was delivered from state custody to federal custo-

dy pursuant to a writ of habeas corpus ad prosequendum. The third case is silent as to that issue and was decided under § 3585(b) and not § 3585(a). The cases are therefore not on point and are not persuasive authority for appellee's position.

released to finish serving unrelated state sentence); *cf. Williams,* 327 F.2d at 323 ("[w]hen a state surrenders one of its prisoners to the federal government for the purpose of trial on charges pending there, a judgment and sentence upon conviction in the federal court does not begin to run, if the prisoner is delivered back to state authorities, until the prisoner is thereafter returned to federal custody and *received at a federal penal institution for service of his sentence* ") (emphasis added).

We emphasize that our holding has no effect on the consecutive nature of Mr. Weekes' sentencing under the presumption set forth in § 3584(a) that sentences imposed at different times will be served consecutively unless the court orders otherwise. Section 3584(a) does not mandate how consecutive sentences are served; the United States Attorney General and the state work that out between themselves by using writs of habeas corpus and detainers. The United States chose to begin Mr. Weekes' federal sentence first, and Idaho expressly conceded to that arrangement, filing its detainer so that he could complete his state sentence afterwards. Except for the Bureau of Prison's "mistake" in prematurely sending him to Idaho, Mr. Weekes would have served a consecutive sentence as contemplated by § 3584(a). The fact that Mr. Weekes has now completed his state obligation because of that mistake is not the controlling factor in determining the completion date of his federal obligation.

We REVERSE and remand for further proceedings consistent with this opinion.