**F I L E D**

**UNITED STATES COURT OF APPEALS**

**October 17, 2006**

**TENTH CIRCUIT**

CHAD A. STROBLE,

          Petitioner - Appellant,

v.

DUKE TERRELL,[*] Warden, USP - Leavenworth,

          Respondent - Appellee.

No. 05-3373

(D. Kansas)

(D.C. No. 03-CV-3155-RDR)

---

**ORDER AND JUDGMENT**[**]

---

Before **KELLY**, **ANDERSON**, and **BEAM**,[***] Circuit Judges.

---

Petitioner Chad A. Stroble appeals the denial of his 28 U.S.C. § 2241 petition seeking credit on his federal sentence for time spent in state custody. We affirm.

---

[*]In August 2005, Duke Terrell became the Warden, USP-Leavenworth. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Mr. Terrell is substituted for N. L. Conner as the Respondent in this action.

[**]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[***]The Honorable C. Arlen Beam, United States Circuit Judge, Eighth Circuit Court of Appeals, sitting by designation.

# BACKGROUND

Stroble was arrested on October 14, 1996, by Kansas City, Kansas, police for possession of a firearm while on state parole. Federal authorities then obtained custody of Stroble and charged and convicted him of being a felon in possession of a firearm, in violation of federal law, 18 U.S.C. § 922(g)(1). He was sentenced to eighty-seven months' imprisonment, to run consecutively to his three- to ten-year sentence imposed under state law for violating parole by possessing a firearm.

After his federal conviction, Stroble was returned to the custody of state authorities at the Kansas Department of Corrections ("KDOC") to serve his sentence for violating parole. A federal detainer was lodged at that time. While he was in state prison for the parole violation, Stroble was charged with trafficking in contraband while in prison, in violation of state law. Stroble completed his sentence for the state parole violation on August 4, 1999. He then pled guilty to the state charge of trafficking in contraband. On October 13, 1999, pursuant to the federal detainer lodged in October 1997 but before he was sentenced on the state trafficking conviction, he was transferred into federal custody, ultimately at the United States Penitentiary at Leavenworth ("USP

Leavenworth"), ostensibly to commence his eighty-seven month federal sentence. This transfer to the federal authorities was the result of an administrative error.[1]

The State of Kansas then filed a "Motion for Writ of Habeas Corpus ad Prosequendum" to take custody of Stroble so that he could be sentenced for the state trafficking conviction. He was subsequently transferred into state custody, sentenced to thirty-two months' imprisonment for that conviction, and transferred to the KDOC to commence serving that thirty-two month state sentence.

Stroble finished serving his state sentence for trafficking on February 21, 2002. He was then transferred to a federal facility to serve his eighty-seven month federal sentence. Stroble was given no credit for the thirty-two months he spent in state prison on the trafficking charge following his brief stay in U.S.P.

---

[1]An internal memorandum from authorities at U.S.P. Leavenworth dated November 2, 1999, described the error as follows:

Inmate Chad Stroble . . . arrived at USP, Leavenworth , Kansas on 10-27-1999. A review of his material indicates that he should not have been designated to us.

He was released from the Kansas DOC on 08-04-1999 to Leavenworth County Sheriff's Department for pending charges of contraband in prison. He was erroneously moved to CCA, Leavenworth on 10-13-1999. For his federal detainer. According to the district attorney's office for Leavenworth County, the county charges have not been completed and subject was not bonded from the charges.

Stroble is being returned today 11-02-1999, to Leavenworth County.

R., tab 8.

Leavenworth pursuant to the administratively erroneous transfer. He was, however, credited with the time spent in the custody of federal authorities, from October 13 to November 8, 1999.

Stroble then filed this habeas petition pursuant to 18 U.S.C. § 2241, arguing that his federal felon-in-possession sentence commenced on October 13, 1999, the date he was erroneously transferred to a federal holding facility awaiting transfer to U.S.P. Leavenworth, or at the latest on October 27, 1999, the date he physically arrived at U.S.P. Leavenworth. He further argued that his federal sentence continued to run uninterrupted when he returned to state custody on November 2, 1999, and that his thirty-two months spent in state prison should be credited against his federal sentence.

The district court denied Stroble's petition, reasoning as follows:

> First, the record does not suggest that petitioner's period of incarceration has been extended due to the error which resulted in his brief transfer to federal custody. Petitioner is serving multiple, consecutive sentences, as ordered by the sentencing courts. Next, the court agrees with the [Fifth Circuit's decision in Free v. Miles, 333 F.3d 550 (5th Cir. 2003] . . . observ[ing] that an administrative error which results in transfers between sovereigns should not operate as "'a get out of jail early card.'"

Stroble v. Conner, No. 03-3155-SAC, 2005 WL 2175161, at *2 (D. Kan. Sept. 8, 2005) (unpublished). The district court finally observed that its decision

> finds some support in Tenth Circuit case law. In Cathcart v. U.S. Bureau of Prisons, 211 F.3d 1277 (Table) (10th Cir. 2000), the petitioner was transferred to federal custody due to an administrative error while he was serving four state sentences. When the error was

-4-

discovered, petitioner was returned to state custody. He challenged the failure of the Bureau of Prisons to grant credit for time in federal custody on both his federal and state sentences and alleged he was being required to serve his sentence in installments. The Court of Appeals reviewed the provisions of 18 U.S.C. 3584(a) and 3585(b), determined Cathcart's sentences were to be served consecutively, and noted that he received credit on his state sentences for the time spent in federal custody as a result of his erroneous transfer. Finding that the petitioner was "in the same position he would have been had he served the full state sentence in state custody", id. at *2, the court denied habeas relief.

Id. The district court accordingly denied Stroble's petition. This appeal followed.

Stroble argues his "federal sentence has been extended by 32-months because of a government mistake." Petitioner's Br. at 10. He further argues that the "plain language" of 18 U.S.C. § 3585(a) requires that his sentence began on October 13, 1999, the date he was erroneously transferred into federal custody, and that granting him thirty-two months credit toward his federal sentence does not amount to granting him double credit, as prohibited by 18 U.S.C. § 3585(b). Rather, he argues, not granting him credit amounts to forcing him to serve his federal sentence in installments, which we have held is impermissible.

## DISCUSSION

"[W]e review de novo the district court's decision to deny habeas relief" under 28 U.S.C. § 2241. Binford v. United States, 436 F.3d 1252, 1253 (10th Cir. 2006).[2]

"The computation of a federal sentence requires consideration of two separate issues. Initially, we determine the commencement date of the federal sentence and then turn to the extent to which a defendant can receive credit for time spent in custody prior to commencement of sentence." Id. at 1254. Under 18 U.S.C. § 3585(a), a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." "A federal sentence does not commence until a prisoner is actually received into federal custody for that purpose." Binford, 436 F.3d at 1255 (emphasis added).

Additionally, once a federal sentence has commenced, it "must generally be served continuously 'unless interrupted by . . . some fault of the prisoner, and he cannot be required to serve it in installments.'" Id. (quoting Weekes v. Fleming, 301 F.3d 1175, 1179 (10th Cir. 2002)). When two sovereigns may claim custody over a prisoner, "[t]he sovereign that first acquires custody of a defendant in a

---

[2]It is not necessary for a federal prisoner to obtain a certificate of appealability before bringing a § 2241 claim. McIntosh v. United States Parole Comm'n, 115 F.3d 809, 810 n.1 (10th Cir. 1997).

-6-

criminal case is entitled to custody until it has exhausted its remedy against the defendant." Weekes, 301 F.3d at 1180. This "rule of comity" requires the second sovereign "to postpone its exercise of jurisdiction until the first sovereign is through with [the defendant] or until the first sovereign agrees to temporarily or permanently relinquish custody." Id.

Two Tenth Circuit cases, Weekes and Binford, provide the framework for our analysis of this case. Stroble relies upon Weekes to support his argument that his federal sentence commenced in October 1999, when he was transferred, briefly and erroneously, to federal custody. The government argues that Binford compels the opposite result. We compare the two cases.

In Weekes, the petitioner, who was in state custody, was released into federal custody for prosecution on federal drug offenses. He returned to state custody pursuant to a writ of habeas corpus *ad prosequendum* for a hearing on state charges. After the hearing, Weekes was returned to federal custody, sentenced on the federal charges and committed to the Federal Bureau of Prisons, then delivered to a federal facility. Approximately two months later, he was returned to state custody to serve his state sentence.

Weekes argued, as does Stroble here, that "pursuant to § 3585(a), his federal sentence actually commenced when he was designated to be transferred to serve his time at the federal penitentiary . . . and continued to run despite the fact that the United States sent him to [the state authorities] to serve his state

sentence." Id. We agreed with Weekes, because the United States could not establish that the transfer of custody by the state authorities to the federal authorities was conditional or temporary. There was therefore a "presum[ption] . . . that both the United States and [the state] agreed to a permanent change of custody." Id. at 1181. We based this conclusion both upon the fact that the transfer was not done pursuant to a document which evidences a clear intent that the transfer is temporary, such as by a writ of habeas corpus *ad prosequendum*, and because the subsequent conduct of both the United States and the state reinforced the presumption that a permanent transfer was intended.[3] We further noted that the United States "consistently designated Mr. Weekes as a federal prisoner after it took custody" and "agreed to notify the State when Mr. Weekes' federal sentence was almost completed." Id. We accordingly determined that Weekes "must be given federal credit for time served since . . . the date his federal sentence actually commenced," id., which was when he was first transferred into federal custody.

_____

[3] The specific subsequent conduct we noted was (1) that the state used an *ad prosequendum* writ to regain custody of Weekes; (2) the state court's "subsequent sentencing order expressly provided that Mr. Weekes' state sentence should be served concurrently with a future federal sentence"; and (3) the state "then lodged a detainer expressly noting that his state sentence was concurrent and requesting Mr. Weekes' return to the state prison system upon completion of his federal sentence, further affirmatively showing its relinquishment of Mr. Weekes to federal primary custody." Weekes, 301 F.3d at 1181.

In Binford, while the petitioner was in state custody charged with state law violations, federal charges were brought against him. Pursuant to a writ of habeas corpus ad prosequendum, the state authorities released him to federal custody to face the federal charges. Binford was sentenced under federal law, but the sentencing order "did not address whether the sentence would run consecutive to or concurrently with any sentence arising from the pending state charges." Binford, 436 F.3d at 1253. Then, in a manner markedly similar to Stroble's situation:

> [i]nstead of returning Binford to state custody, the United States Marshals Service mistakenly delivered Binford to the Federal Correctional Institution in El Reno, Oklahoma on April 23, 1996. After reviewing Binford's file, prison staff realized he should have been transferred immediately back to the state because the writ of habeas corpus *ad prosequendum* did not transfer the primary jurisdiction of custody to federal authorities. Accordingly, Binford was returned to Oklahoma state authorities on May 13, 1996.

Id.

The state authorities then sentenced Binford for his state convictions, and specified that the state sentences were to be "consecutive to the federal sentence." Id. at 1254. Binford made the same argument Stroble does, asserting that Weekes is virtually indistinguishable and compels the result that his federal sentence commenced when he was first mistakenly transferred to a federal facility. He did concede, however, that "the only detail that is not completely parallel is the fact that the federal government here produced an *ad prosequendum* writ by which it

-9-

gained custody of Binford." Id. at 1255-56 (internal quotation and alteration

omitted). While Binford argued that the state's alleged use of an *ad

prosequendum* writ[4] to regain custody of Binford indicated that primary custody

remained with the United States, we dismissed the significance of that, stating:

> What is important is that the record contains the initial application
> and Order for Writ of Habeas Corpus *Ad Prosequendum* requesting
> Binford be brought before the federal court for the purpose of
> prosecution of the charges against him. The Order of Temporary
> Custody was entered the next day. Binford remained in temporary
> custody until his sentencing. Therefore he was at all times held
> pursuant to the original writ and order.

Id. at 1256.

We therefore rejected Binford's argument based upon Weekes and held that

his federal sentence did not begin when he was initially briefly, and mistakenly,

placed into federal custody. We noted that "the continuous service rule is not a

'get out of jail early card' for prisoners." Id. (quoting Free v. Miles, 333 F.3d

550, 555 (5th Cir. 2003). Finding "no evidence that Oklahoma surrendered

Binford's custody to the federal authorities other than to accord Binford

expeditious administration of justice," we held that his "mistaken delivery to the

El Reno facility was short-lived and corrected swiftly after the prison staff

discovered the error[] [and] the overall period of his incarceration is not extended

beyond the time contemplated by the sentencing courts." Id. (internal quotation

---

[4]Although Binford claimed the state used an *ad prosequendum* writ to
regain custody of Binford, we noted that the record contained no other evidence
that such a writ was in fact used.

and alteration mark omitted). Thus, his "federal sentence never began until he was finally received into federal custody for the purpose of serving his federal sentence, after completing his state sentence." Id.

Stroble's situation is not precisely like either that presented in Weekes or in Binford. However, we conclude that it is closer to Binford than Weekes, and we therefore conclude that Stroble's federal sentence did not commence until he was delivered to the federal facility to actually begin serving that sentence on February 21, 2002. We therefore need not address any argument about whether giving him credit for the thirty-two month state sentence is impermissible double-crediting.

We begin by observing that, as in Weekes and Binford, Stroble was indisputably in state custody initially. Thus, we must determine, from both the manner in which Stroble was turned over to the federal authorities and from the subsequent conduct of both sovereigns, whether the parties intended that primary custody would be transferred to the United States. We conclude that they did not so intend.

First, although the record contains no evidence that the federal authorities initially obtained custody over Stroble pursuant to a writ *ad prosequendum* or some comparable document, we decline to find that one fact determinative. In any event, Stroble was promptly returned to state custody after he was convicted and sentenced on the federal charges.

-11-

Second, although Stroble argues that the filing of a detainer when the federal authorities returned Stroble to state custody following his conviction under federal law indicates that the parties intended primary custody over Stroble would promptly shift from the state to the federal authorities once Stroble finished his state sentence for parole violation, that argument assumes too much. The detainer was lodged before Stroble committed further violations of state law, necessitating further state law proceedings and another sentence. Stroble was charged with and pled guilty to those new state charges before he was inadvertently transferred to the care of federal authorities. That alone clarifies the state's primary custody over him. In any event, it renders implausible the claim that the parties intended to transfer primary authority over Stroble to the federal government once he finished his sentence for violating his state parole.

Third, although the state did file an *ad prosequendum* writ to regain custody over Stroble after his erroneous transfer to a federal facility, nothing else in the parties' conduct suggests they believed primary custody had transferred from the state authorities to the federal authorities as a result of that erroneous transfer. Indeed, all indications are that the federal authorities immediately realized the error and promptly returned Stroble to state custody.

Finally, as we observed in Binford, the sentencing courts clearly and specifically expressed the intent that Stroble's sentences would be consecutive. In holding as we do, we give effect to that intent. See Binford, 436 F.3d at 1256

("Indeed, the overall period of his incarceration is not extended beyond the time contemplated by the sentencing courts."). While Stroble would have us believe he has been sentenced to an extra thirty-two months because of the government's error, in reality, he has only been denied a windfall which would have been his because the government made an error which it quickly rectified.[5] There was no evidence of intentional manipulation by the federal authorities. Thus, on the facts of this case, the government's ministerial error was harmless.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the denial of Stroble's 28 U.S.C. § 2241 petition.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[5]Stroble argues that the very fact that the sentencing court credited to him time spent in the custody of federal authorities from October 13, 1999, until November 8, 1999, means that his sentence commenced on October 13. Stroble misapprehends the nature of sentence credits. 18 U.S.C. § 3585(b)(1) provides that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences[] as a result of the offense for which the sentence was imposed." That is precisely what Stroble got here—credit for time spent in detention, prior to the commencement of his sentence, on account of the crime of conviction. His receipt of credit for that time does not mean his sentence commenced when he began serving that time.